IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DEMETRIOS E. BRACEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.  14-cv-0432-MJR-SCW |
| | ) |
| CLAUDIA DOWTY, | ) |
| JAMES OCHS, | ) |
| STEPHEN DUNCAN, and | ) |
| JOHN DOE, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

**REAGAN, Chief Judge:**

BACKGROUND

Plaintiff Demetrios Bracey, currently represented by counsel, filed his complaint *pro se* on April 14, 2014, alleging constitutional violations pursuant to 42 U.S.C. § 1983. After the Court's threshold review, the only claims which remained were claims of deliberate indifference to medical care. Specifically, Plaintiff alleges he suffered from lower back pain due to a prior injury and that, sometime in August 2013, he was prescribed pain medication for his lower back. However, on August 29, 2013 (before he received his prescription), he slipped and fell on a wet floor outside his cell, then on the way to the yard felt an extreme pain in his back (Doc. 4, p. 1).

Plaintiff asked Defendant Ochs for help, but Ochs sent him back to his housing unit and refused to summon medical help (*Id.* at 1-2). Plaintiff then told Officer Clark about his injuries, informed him of the pre-existing back problem, and asked for medical attention (*Id.* at 2). Clark requested that Defendant Dowty, a nurse, see Plaintiff, but she refused because Plaintiff was not on her appointment list. Instead, she said Plaintiff should put in a sick call slip (*Id.*).

Clark contacted Dowty later in the day about Plaintiff's injuries, but she again refused to see him. Plaintiff asked Clark to make a report of his contact, but but Clark refused (*Id.*). Clark did contact the health care unit for Plaintiff, but someone in the unit stated that—since Plaintiff had recently been seen for back pain—that there was nothing they could do, and that he would have to wait for his pain medication. Clark would not disclose to Plaintiff the name of the individual in the health care unit with whom he spoke (*Id.*). Plaintiff received the pain medication days later, but it had little effect on his pain.

Plaintiff's Count 1 alleges that Defendant Dowty and an unknown medical provider (John/Jane Doe, who was contacted by Clark) acted with deliberate indifference to Plaintiff's serious medical needs by refusing to evaluate or treat Plaintiff for his back pain. Count 2 alleges that Defendant Ochs was deliberately indifferent by refusing to summon medical assistance for Plaintiff following his slip and fall.

Now before the Court is Defendant James Ochs' Motion for Summary Judgment on the Issue of Exhaustion (Doc. 32). Defendant Ochs argues that Plaintiff failed to (as required by the Prison Litigation Reform Act, "PLRA," 42 U.S.C. § 1997e(a)), exhaust his administrative remedies prior to filing suit.

Plaintiff wrote two grievances regarding his slip and fall and the medical treatment he received for that injury (Doc. 33-3 at 3–13). Both grievances are dated August 29, 2013, and state that Defendant Ochs denied him medical treatment after his fall (*Id.*). One grievance was reviewed by his counselor on September 5, 2013; the other was reviewed on September 6, 2013 (*Id.* at 3 and 9). The grievances were denied by the grievance officer on September 19, 2013, and affirmed by the chief administrative officer on April 4, 2014 (*Id.* at 2). Plaintiff submitted his appeal to the ARB on April 15, 2014 (*Id.*). The grievances were received by the ARB on April 21, 2014 and ultimately denied on

September 11, 2014, with the decision affirmed by IDOC Director Godinez on September 16, 2014 (*Id.* at p. 1).

Plaintiff filed the complaint in this case on April 14, 2014 (Doc. 1).

Plaintiff also submitted an emergency grievance on his injuries and interactions with Defendant Ochs on March 8, 2014 (Doc. 33-2 at p. 2-5). The warden received the grievance on March 19, 2014, and deemed it not an emergency—instructing Plaintiff to submit his grievance in the normal fashion (*Id.* at 2). Plaintiff appealed that grievance to the ARB, where it was received on April 2, 2014 (*Id.*). The ARB returned the grievance on May 7, 2014 (again, *after* Plaintiff filed the instant lawsuit), finding that Plaintiff had failed to include his counselor's and grievance officer's responses (*Id.* at p. 1).

Plaintiff has filed a response to the instant motion, indicating that he exhausted his administrative remedies as of September 2014, and acknowledging that his complaint was filed on April 14, 2014 (Doc. 35). Plaintiff asks that if this Court dismisses his complaint, it should be dismissed without prejudice, so that Plaintiff may re-file his case against Defendant Ochs now that he has exhausted his administrative remedies.

## LEGAL STANDARDS

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). **42 U.S.C. §1997e(a).** That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* **(emphasis added).** The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion").**

Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury, but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-41 (7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

Additionally, exhaustion is a precondition to filing suit; a prisoner may not file suit in

anticipation that his administrative remedies will soon become exhausted. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Rather, a prisoner must wait bring a suit until he completes the exhaustion process. *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999) (citing 42 U.S.C. § 1997e(a)). A suit that is filed prior to the exhaustion of remedies must be dismissed, even if a plaintiff's administrative remedies become exhausted during the pendency of the suit. *Id.*

As an inmate confined within the Illinois Department of Corrections, Plaintiff was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. **20 Ill. Administrative Code §504.800 *et seq.*** The grievance procedures first require inmates to speak with the counselor about their complaint. **20 Ill. Admin. Code § 504.810(a).** Then, if the counselor does not resolve the issue, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident. *Id.* The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code §504.810(a)(b).** "The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer...[who] shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code §504.830(d).**

If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB"). The grievance

procedures specifically state, "[i]f after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision. Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached." **20 Ill. Admin. Code §504.850(a).** "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code §504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code §504.850(f).**

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer ("CAO") who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. **20 Ill. Admin. Code §504.840(a).** If an inmate forwards the grievance to the CAO as an emergency grievance, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary after reading the grievance. **20 Ill. Admin. Code §504.840(b).** Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis. **20 Ill. Admin. Code § 504.850(g).**

## ANALYSIS

Here, Plaintiff concedes that he did not exhaust his administrative remedies until after he filed suit. Plaintiff acknowledges that he filed his complaint on April 14, 2014 (Doc. 1), but that he did not

exhaust his administrative remedies until he received a response from the ARB on September 16, 2014 (Doc. 33-3 at p. 1). Plaintiff received his grievances back from the CAO on April 4, 2014 and Plaintiff submitted the grievance to the ARB on April 15, 2014—the day after he filed his Complaint.[1] Similarly, his emergency grievance, though received on April 2, 2014, was not returned to Plaintiff (and could not, therefore, have been appealed to the ARB) until May 7, 2014.

Plaintiff, in other words, did not exhaust his administrative remedies prior to filing suit. The PLRA requires that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until…[his] administrative remedies as are available are exhausted." **42 U.S.C. § 1997e(a).** The Seventh Circuit requires strict adherence to that exhaustion requirement. *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006),** and exhaustion must occur *before* the suit is filed. *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004);** *Pavey v. Conley*, **544 F.3d 739, 740-42 (7th Cir. 2008).** As Plaintiff failed to exhaust his administrative remedies against Defendant Ochs prior to filing suit, the Court must dismiss his claim.

## Conclusion

Accordingly, the Court **GRANTS** Defendant Ochs' motion for summary judgment (Doc. 32) and **DISMISSES without prejudice** Plaintiff's deliberate indifference claim against Defendant Ochs.

Given the fact that **(1)** only Defendant Ochs sought to dismiss Plaintiff's claim, **(2)** other Defendants still remain (i.e., this case will nevertheless go forward on Plaintiff's other Eighth

---

[1] The Court notes that it has found in the past that a plaintiff has exhausted when he did not receive a grievance back from an official within the time frame allowed by the Illinois Administrative Code, and the inmate went ahead and filed his complaint. The instant situation is distinguishable, as Plaintiff waited until he received the grievance back from the CAO (though the response could be considered outside of the timeframe allowed for responding), then filed his Complaint while also pursuing an appeal. Having received his grievance back from the CAO prior to filing suit, Plaintiff should have completed the grievance process prior to filing suit. *See also* **20 Ill. Admin. Code § 504.830(d) (CAO response due within two months "where reasonably feasible under the circumstances").**

Amendment claims), and **(3)** the parties concede that Plaintiff has *now* exhausted his administrative remedies, the Court **DISMISSES** the claim against Ochs **without prejudice.** For the sake of judicial economy, the Court **GRANTS** Plaintiff leave to file an Amended Complaint against Ochs *in this case* by **March 19, 2015**.

    **IT IS SO ORDERED**.
    **DATED: March 12, 2015.**　　　　　　　　　　　　s/ *Michael J. Reagan*
    　　　　　　　　　　　　　　　　　　　　　　　　**MICHAEL J. REAGAN**
    　　　　　　　　　　　　　　　　　　　　　　　　**Chief Judge**
    　　　　　　　　　　　　　　　　　　　　　　　　**United States District Court**